AUGUSTUS PETTYJOHN *et ux.* v. JAMES L. WILKIN.

(Filed July 6, 1901.)

1. USURY—What Constitutes. Pettyjohn, being indebted to many persons and insolvent, made a general assignment, and afterwards made an agreement with Wilkin, whereby Wilkin agreed to settle Pettijohn's indebtedness, and thereupon be subrogated to all of the rights of the creditors to whom such payments should be made, and thereafter they effected a settlement between each other by which Wilkin took $4395.30 for the claims which he had bought, the sum including, however, one hundred dollars to be paid for legal services, and five hundred dollars to compensate Wilkin for services rendered in taking charge of the property, selling the stock, collecting the rents and to cover his profit. Held, That this was not in violation of the statute against usury.

2. VERDICT—Not Disturbed, When. Special findings of fact were made by the jury, in which they held that the transaction was not merely a loan and that the contract was not an usurious one, and returned a general verdict in favor of Wilkin. Held, That since the evidence tends to show that the contract was not usurious and the special and general findings of the jury were to that effect, the verdict will not be disturbed here.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before*

*B. F. Burwell, Trial Judge.*

*J. R. Keaton,* for plaintiff in error.

*H. H. Howard* and *C. B. Ames,* for defendant in error.

STATEMENT OF FACTS.

On the 7th day of February, 1898, Pettyjohn executed an assignment for the benefit of creditors, and thereafter undertook to effect a settlement with them, and for that purpose endeavored to secure a loan from various persons,

but failed to do so. Thereafter Howard, as attorney for Pettyjohn, made an arrangement and agreement in writing, with Wilkin, by which it was recited that "Pettyjohn being indebted to numerous persons, and being engaged in negotiations for the payment and settlement of such debts by the use of money furnished by Wilkin, but to arrange such settlement it appears to be necessary to first settle such debts or a part thereof. It is expressly understood and agreed in any and all cases where the said Wilkin may or shall pay or settle any of the debts of the said Pettyjohn. that he shall be subrogated to all of the rights of the person to whom such payment is made, and that the claims and debts so paid may be held against Pettyjohn by Wilkin in precisely the same manner and with all the same rights as if originally contracted with Wilkin."

After this was done, Pettyjohn and Wilkin effected a settlement, by which Wilkin accepted $4,395.30 for the claims which he had bought, and took a note and mortgage to secure the amount. This sum included one hundred dollars to be paid to Howard for his legal services, and five hundred dollars to compensate Wilkin for services rendered in taking charge of the property, selling the stock, collecting rents, and to cover his profit. Pettyjohn thereafter brought this action against Wilkin, in which he alleged that Wilkin was in possession of his property under a note and mortgage, and that these were usurious to the extent of five hundred dollars which were included in the note as a bonus for loaning, and for the use of a part of the money, and that the attorney's fee for one hundred dollars was not a legal demand, and was excessive. He alleged that Wilkin was in possession of his goods under a power of

sale, which he threatened to execute, to the great damage of plaintiff; and prayed for the appointment of a receiver, and that the proceeds be used to pay the indebtedness to Wilkin, and lawful interest.

Wilkin denied the usury, and asked for the foreclosure of his mortgage. The case was tried to a jury and resulted in a verdict and judgment for the defendant in the sum of $1,100.

Opinion of the court by

McATEE, J.: The only question involved in the case is whether or not the sum of five hundred dollars which Pettyjohn agreed to pay to Wilkin, together with the attorney's fee to be paid to Howard, were usurious.

Howard, who acted as attorney for Pettyjohn, conducted the negotiation between them, procured the money, and completed the arrangement, testified that: "The agreement made was that Mr. Wilkin should take full charge of this matter, and rent the property and collect the rents, and sell the remnant of stock that was there, and there was some conversation about looking after the payment of taxes, and things of that kind. There was conversation with reference to the matter that I introduced myself. My own personal obligation was out in the matter. I had gone to the sheriff, and had obligated myself to pay the taxes to avoid a tax warrant from being levied on the stock, while Wilkin undertook to see that if the assignee neglected to take care of that, that he would do so."

Wilkin testified that: "Pettyjohn came to me for this money. He said he would gladly give any one who

Pettyjohn *et ux.* v. Wilkin.

would furnish the money five hundred dollars to assume and clean up this indebtedness. And that five hundred dollars was for the services which he rendered while he was in possession of the property, and was a part of the consideration of the note * * * and for buying and taking up the claims and looking after them."

Special findings of fact were made by the jury. The jury expressly found that two written contracts introduced in evidence between Pettyjohn and Wilkin were not merely a scheme or device entered into between the parties for the purpose of concealing the real nature of the transaction involved; that Wilkin did not intend the transaction merely as a loan, but that he intended it as a speculation in the paper or debts of Pettyjohn; that Wilkin entered into an agreement whereby he was to furnish sufficient money on behalf of the plaintiff to pay off and settle with the creditors of the plaintiff and that the sum of five hundred dollars was not received by him "for the use of said money and as interest thereon;" that the agreements made between Wilkin and Pettyjohn were not as to the five hundred dollars "a device or trick to cover up and conceal usury;" that Wilkin was to render services in supervising the property of Pettyjohn as part consideration for the five hundred dollars; and that Wilkin did something further than to furnish the money and pay off the creditors; and that the five hundred dollars in controversy was not charged as interest for a loan.

Since there was evidence in the case tending to support these special findings of fact made by the jury, and since they expressly affirm that the five hundred dollars

was not usury, but was in consideration of other services rendered by Wilkin to Pettyjohn in the settlement of his affairs, the verdict of the jury and the judgment of the court upon it will not be disturbed here.    We have examined the evidence and the instructions of the court.    We find no error in the case.

The judgment of the trial court is affirmed.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.